# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| EVANS PRODUCTIONS, LLC, | Case No. 19-CV-1909 (NEB/HB) |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| DYNAMIC MUNITIONS, LLC, doing business as DYNAMIC MUNITIONS CORPORATION, | |
| Defendant. | |

Plaintiff Evans Productions, LLC ("Evans") filed this action against Dynamic Munitions, LLC, doing business as Dynamic Munitions Corporation ("Dynamic") in state court, alleging claims of breach of contract and quantum meruit. Dynamic removed the action to federal court, and answered the complaint. After discovery, Evans filed the instant motion for summary judgment. (ECF No. 17.) In response, Dynamic informed the Court that it does not oppose the motion. The Court has considered Evans' breach of contract and quantum meruit claims. Finding no genuine issues of material fact, the Court concludes that summary judgment in favor of Evans is proper.

1

## BACKGROUND

The Court draws the following background facts from the record, viewing the evidence in the light most favorable to Dynamic. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

Evans is a Wisconsin limited liability company that produces "The Ultimate Hunt" television show ("Show"); the Show aired nationally on the Sportsman Channel during the periods relevant to this action. (ECF No. 18 ("Robert Aff.") ¶¶ 1–2; ECF No. 2 ("Ans.") ¶ 6.) Dynamic is a Texas limited liability company that manufactured and sold weaponry and ammunition. (Ans. ¶¶ 2, 5.) In September 2017, Dynamic agreed to purchase one thirty-second commercial advertisement featuring its products during each episode of the Show in the third and fourth quarters of the Sportsman Channel's schedule for $35,000. (ECF No. 18 ("Robert Aff.") ¶ 4; Ans. ¶ 8.) Dynamic then purchased a second fifteen-second commercial advertisement for $15,000. (Robert Aff. ¶ 4.) Dynamic paid Evans these amounts in full, (*id*.), paying the balance of $35,000 on January 5, 2018. (Ans. ¶¶ 12, 13.)

Thereafter, Evans and Dynamic entered into negotiations for Dynamic to become the "Title Sponsor" of the episodes of the Show airing on the Sportsman Channel in the third and fourth quarters of 2018. (*Id*. ¶¶ 14, 15.) During these negotiations, Eric Cowdrey held himself out to be the President and owner of Dynamic and that he had authority to

enter into such negotiations. (*Id*. ¶ 14 (denying this allegation only to the extent Cowdrey represented that he was the "owner," implying that there were no others).)

Evans entered into a written "Ultimate Hunt Sponsorship" Agreement with Dynamic in May 2018. (ECF No. 1-1 at 11 ("2018 Agreement").) Under the terms of the agreement, Evans was to create and produce thirteen episodes of the Show during which Dynamic commercials would run and Dynamic would be identified as the exclusive Title Sponsor. (2018 Agreement ¶ 1 & Ex. A.) In return, Dynamic agreed to pay Evans a "Sponsorship Fee" of $145,000, to be paid in three installments. (*Id*.) The 2018 Agreement is governed by the laws of the state of Minnesota. (*Id*. ¶ 12.) It also states that "[o]n behalf of the Sponsor [Dynamic], the undersigned represents and warrants that he/she has the requisite authority and power to sign this Agreement and bind the Sponsor accordingly." (*Id*.) The Executive Producer of the Ultimate Hunt, Robert Evans ("Robert"), signed the agreement on May 5, 2018.[1] (*Id*. at 4–5.) The agreement was signed electronically by Cowdrey as "Owner/President" of Dynamic. (*Id*.)

On May 21, 2018, Crowley emailed the signed 2018 Agreement to Evans, (ECF No. 19 ("Linda Aff.") ¶ 2; Linda Aff., Ex. 1), and sent a text message to Robert stating in

---

[1] "The Ultimate Hunt/Robert Evans" executed the 2018 Agreement and later assigned, transferred and conveyed its interest in the agreement to Evans by way of an Assignment of Sponsorship Agreement. (Compl. Exs. 1, 2.)

part, "I e-mailed the contract back to you signed and the check went out last week . . . ."[2] (Robert Aff. ¶¶ 10–11; *id*. Ex. 9; ECF No. 20 ("Schiller Aff.") Ex. F ("Dynamic RFA") No. 3.) Cowdrey's e-mail signature block on his dynamicsmunitions.com e-mail states that he is the "CEO" of Dynamic. (*E.g.*, Robert Aff. Ex. 8; Dynamic RFA No. 5.)

By the end of May 2018, Evans had filmed and completed approximately ten of the thirteen episodes of the Show featuring the Dynamic title sponsorship content. Evans continued to air the Dynamic title sponsorship package through the period contemplated by the 2018 Agreement. (Robert Aff. ¶¶ 19–20; Robert Aff., Ex. 16.) Dynamic admits that Cowdrey sent Robert a text message on July 15, 2018, stating, "Yes it was great I woke up early and drank my coffee while watching." (Dynamic RFA No. 4; *see* Robert Aff. Ex. 12.) As part of title sponsorship, Evans provided Dynamic with a custom carpet and a booth for use, display, and promotion of Dynamic's products at a trade fair in Houston, Texas, in July 2018. (Ans. ¶ 17.) Dynamic admits that it did not pay the Sponsorship Fee under the 2018 Agreement. (Ans. ¶ 22.)

Evans sued Dynamic for breach of contract and quantum meruit in Minnesota state court. (ECF No. 1-1 ("Compl.").) Dynamic removed the action to this Court and filed its answer in July 2019. (ECF Nos. 1, 2.) Evans now seeks summary judgment against Dynamic for the amount of $145,000, plus taxable costs, disbursements and interest

---

[2] Evans provides Cowdrey's May 21, 2018 email to Evans attaching "Dynamic.Munitions.CORP.2018.Title.Sponsorship.TV.Agreement.doc–Google Docs.pdf." (ECF No. 19-1.) This exhibit does not include this attachment.

4

thereon, including reasonable attorney fees. Dynamic does not oppose the motion. (ECF No. 22.)

## ANALYSIS

### I. Legal Standard

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing Fed. R. Civ. P. 56(c)). In assessing whether such a dispute exists, "[a] court must 'make all reasonable inferences in favor of the non-moving party,' but will 'not resort to speculation.'" *Hill v. Sw. Energy Co.*, 858 F.3d 481, 487 (8th Cir. 2017) (quoting *Solomon v. Petray*, 795 F.3d 777, 788 (8th Cir. 2015)). "The burden of demonstrating an absence of a genuine dispute of material fact is on the moving party." *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Where a party fails to properly address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Where, as here, a motion for summary judgment is unopposed, the court "must still determine that the moving party is entitled to judgment as a matter of law on [each] claim." *Calon v. Bank of Am., N.A.*, 915 F.3d 528, 530 (8th Cir. 2019) (citation omitted). But it is not the Court's responsibility to "sift through the record to see if, perhaps, there was an issue of fact" precluding summary judgment. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734–35 (8th Cir. 2009).

## II.   Count I: Breach of Contract

Evans asserts that Dynamic breached the 2018 Agreement. The 2018 Agreement is governed by Minnesota law, under which a breach of contract claim has four elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Nelson v. Am. Family Mut. Ins. Co.*, 899 F.3d 475, 480 (8th Cir. 2018) (citation omitted).

As to the formation of the contract, Evans provides evidence that the 2018 Agreement was signed electronically by Cowdrey as "Owner/President" of Dynamic. *See Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 458 (Minn. Ct. App. 2001) ("because corporate presidents generally control and supervise a corporation's business, unless there is contrary evidence, contracts made by a corporation's president in the ordinary course of business are presumed to be within the president's authority"); *see also* Minn. Stat. § 325L.07(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). Evans also provides evidence of the parties'

6

intent to enter into a contract via proof of their negotiations for Dynamic to become Title Sponsor of the Show. (Robert Aff. ¶¶ 5–9; Robert Aff., Exs. 3–8.) In a text dated May 21, 2018, Cowdrey confirmed the formation of the contract, stating that he had emailed the signed contract to Robert. (*See* Robert Aff. ¶¶ 10–11; Robert Aff., Ex. 9; Dynamic RFA No. 3.) That same day, Evans received an email from Cowdrey attaching the "e-signed" 2018 Agreement. (Linda Aff. ¶ 2; Linda Aff., Ex. 1.) Based on the evidence presented, the Court finds that Evans has proven that the parties entered into the 2018 Agreement.[3]

Evans offers evidence that it performed its obligations under the 2018 Agreement by completing most of the Show episodes featuring Dynamic as the Title Sponsor by the end of May 2018, and airing the Dynamic title sponsorship package through the period contemplated by the agreement. (*See* Robert Aff. ¶¶ 19–21.) And it is undisputed that Dynamic did not pay Evans under the terms of the 2018 Agreement. (Ans. ¶ 22.) The Court therefore finds that Dynamic breached the 2018 Agreement.

The remaining issue is damages. "Under Minnesota law, damages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860,

---

[3] In its Answer and discovery responses, Dynamic denied that Cowdrey executed the 2018 Agreement on Dynamic's behalf. But to survive a motion for summary judgment, Dynamic cannot rely on mere denials. *John Deere Fin. v. Bio-Mass Renewable Techs., Inc.*, No. CV 15-31 (DWF/TNL), 2017 WL 3738450, at *2 (D. Minn. Aug. 29, 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Dynamic chose not to oppose summary judgment. Without evidence to support its contentions, these denials cannot avoid summary judgment. *See id.*

865 (8th Cir. 2004) (citation omitted). Expectation damages for breach of contract "attempt to place the plaintiff in the same position as if the breaching party had complied with the contract." *Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999). Here, Evans seeks the amount it would have received had Dynamic complied with the 2018 Agreement and paid the Sponsorship Fee of $145,000.00. (2018 Agreement ¶ 1 & Ex. A.) The Court finds that Evans has presented sufficient evidence of the amount of its expectation damages. *See Children's Broad. Corp.*, 357 F.3d at 865 ("[O]nce the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount.") (citation omitted).

Dynamic offers no argument or evidence in response to Evans's motion for summary judgment, and no material dispute of fact exists. The undisputed record before the Court indicates that Evans is entitled to judgment as a matter of law on its breach of contract claim. Summary judgment on Count I entitles Evans to a judgment in the amount of $145,000.00.

### III.     Count II: Quantum Meruit

Because the Court grants Evans's motion for summary judgment on Count I, it need not reach Evans's quantum meruit claim. (*See* ECF No. 15 at 22 (indicating that Evans's quantum meruit claim is an alternative claim for relief).)

### IV.     Attorney's Fees and Costs

In addition to the amount Dynamic owes under the 2018 Agreement ($145,000.00), Evans seeks taxable costs, disbursements and interest thereon, and reasonable attorneys' fees. The 2018 Agreement provides that "should [Evans] take any action to enforce the terms of this Agreement, [Dynamic] shall be liable for such costs and expenses incurred in enforcement, including, but not limited to, reasonable attorney's fees." (2018 Agreement ¶ 12.) "Attorney's fees are within the broad discretion of the district court." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Id*. (citation omitted). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Id*.

Evans provides the Court with the affidavit of its attorney, Rebecca F. Schiller, as evidence of the legal work performed on Evans's behalf in connection with this matter. (Schiller Aff. ¶¶ 15–19.) Schiller attests that Evans has been billed $44,269 for 127.50 hours worked at rates of $275 and $350 per hour. (*Id*. ¶¶ 16–17.) Schiller also attests that Evans incurred total costs of $500. (*Id*. ¶ 18.) Evans has not presented the invoices for these legal services, though counsel offered to provide them to the Court for *in camera* review.

Because Evans was forced to take action to enforce the terms of the 2018 Agreement, Dynamic is liable for costs and expenses incurred in enforcement, including

9

reasonable attorney's fees. (2018 Agreement ¶ 12.) The Court therefore grants Evans's request for attorney's fees and costs. Although Evans's request of $44,269 in attorney's fees and $500 in costs appear appropriate to the Court given the nature of the case, the Court reserves the right to determine the exact amount of attorney's fees and costs after reviewing Evans's records. Thus, the Court directs Evans to submit unredacted billing records and a list of costs to the Court, and redacted versions of the same to Dynamic, within fourteen (14) days of this Order. Dynamic will then have five (5) days thereafter during which it may review the records and file any objections.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Evans Productions, LLC's Motion for Summary Judgment (ECF No. 17) is GRANTED;

2. As to Count I of Plaintiff's Complaint, JUDGMENT in favor of Plaintiff and against Defendant Dynamic Munitions, LLC, d/b/a Dynamic Munitions Corporation, BE ENTERED in the amount of $145,000.00, plus taxable costs and disbursements and interest thereon; and

3. Plaintiff's request for attorneys' fees and costs GRANTED. Evans shall submit unredacted billing records and a list of costs to the Court, and

redacted versions of the same to Dynamic, within fourteen (14) days of this Order. Dynamic will then have five (5) days to object to any bill or cost.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 31, 2020                              BY THE COURT:

                                                  s/Nancy E. Brasel
                                                  Nancy E. Brasel
                                                  United States District Judge